UNITED STATES DISTRICT COURT
DISTRICT COURT OF KANSAS



JUN 15 2022

Clerk, U.S. District Court
By: _____ Deputy Clerk

In the Re of Care and Treatment of         )
Mr. David W. Thayer  and
Mr. Steven E. Newsome                      )

                   Plaintiffs   )

vs.                                        Case No: 22-3086- SAC
                                )            Amended
                                      civil rights complaint
Mrs. Haleigh Bennett                       )    42-U.S.C.-1983
acting Program Director of SPTP
                                   )

Mr. Jeff Brown                             )
Chaplin of LSH/SPTP
                                   )
                   Defendents
                                   )

## CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. 1983

      COMES NOW, Petitioner David Thayer, Pro-se and petitions this court for final and injunctive relief, punitive damages, and compensatory damages on the following grounds and for the following reasons: Petitioner is a resident of the State of Kansas who is civilly committed to Larned State Hospital-Sexual Predator Treatment Program (herein referred to as SPTP) under the Kansas Sexually Violent Predator Act (59-29a01 et seq) and herein referred to as the act.

Under the Act, Conditions of confinement are to meet the Constitution and are to be constitutional (see KSA 59-29a09) "The involuntary detention or commitment of persons under this act SHALL conform to constitutional requirements for care and treatment"

All of the above named defendants are directly responsible for ensuring that the petitioner's statutory and constitutional rights are protected and as such are responsible for taking proper action(s) when such rights are violated or denied to petitioner.

Petitioner brings this action on behalf of and for himself as well as all residents in SPTP who believe in and practice the Native American path who are members of the Gray and Red Wolf Call-Out and to include the Independents, here in SPTP as any decision for or against petitioner will ultimately affect these residents as well.

(1.)    Petitioner states that his constitutional and statutory rights to practice his religion are being and have been violated and denied to him and his fellow Native residents under and contrary to Kan.Stat.Ann. 59-29a22(b) (8) and the First Amendment of the United States Constitution and RLUIPA. Petitioner further asserts that there has been a repeated and continuing deliberate indifference by the named defendants to religion and religious rights, beliefs and practices.

(a)    Petitioner further asserts that the Secretary of KDADS (defendant Laura Howard) refuses to take any actions against SPTP officials, namely the defendants listed in this suit even though defendant Laura Howard is responsible for ensuring our rights are not violated pursuant to Kan. Stat. Ann. 59-29a22.

(b)    Kan. Stat. Ann. 59-29a22(b) (8) states in pertinent part: "Sexually Violent Predators; rights and Rules of Conduct; definitions…(b) Each person shall have the following statutory rights…(8) To individual religious worship within the facility if the person desires such an opportunity, as long as it complies with applicable laws and facility rules and policies…"

(c)    LSH-SPTP Policy P9-06 lists the religious rights and guidelines for persons in LSH/SPTP (See enclosed copy for record). Nowhere in this does it give LSH/SPTP staff the authority to restrict or deny a person's religious freedoms and rights in whole or in part.

(d)    Kan. Stat. Ann. 59-29a22 lists specific rights that can be restricted or denied for cause and states the procedures that must be followed when such rights are denied or restricted. Religion and religious freedoms is not one of those rights that can be denied or restricted per this statute. Therefore, the defendants have no legal authority to completely or even partially deny or restrict petitioner's right to pray according to his sincerely held beliefs as they have done and continue to do.(See Kan. Stat. Ann. 59-29a22(C) (1) "A person's rights under subsections (b) (15) to (b) (22) may be denied for cause by the superintendent of the facility or the superintendent's designee, or when medically or therapeutically contraindicated as documented by the person's physician, licensed psychologist or licensed master's level psychologist in the person's treatment record…". Petitioner hereby asks this court to take note of the fact that, per this state law, only the rights listed from (b)(15) to (b)(22) can be restricted or denied and that would conclude that and imply that (b)(8) is not included and cannot be denied or restricted.

(e)    In March 2020 Defendants, Haleigh Bennett, Lisea Dipman, and Linda Kidd, implemented an unpublished "memo" that due to COVID-19 all call-out activities, including religious meals were suspended. These defendants did not publically publish the first official "memo" available to SPTP residents regarding this decision until April 1, 2020. Since then these defendants have posted multiple

memos easing and the tightening these restrictions. However, each time until late 2021, the right to pray according to my religious beliefs dictates through use of a Pipe and tobacco was continually denied. Defendants made no effort to accommodate this religious tenet until after petitioner initially filed this complaint later in 2020 even though they were given multiple ways to safely do so in the least restrictive means. (See copies of all posted memos regarding call-outs and COVID-19).

(f)     On June 27, 2020 Petitioner filed a grievance after being denied his request to be allowed to go out and say a prayer(which would include Smudging and use of the Pipe and tobacco) This would have been no different than staff taking petitioner to the same area where he was being given his 3 Fresh Air breaks a day by himself. Since petitioner would have been by himself he therefore would have been "socially distanced". However, defendants, Haleigh Bennett and Jeff Brown denied his request. When petitioner then asked if he could just Smudge alone this was also denied.

(g)     On May 25, 2020, several months after SPTP shut everything down because of COVID-19, Petitioner submitted a request to Treatment Team asking for authorization to purchase a Personal Pipe so petitioner could make his prayers in accordance with his fundamental and sincerely held religious beliefs without risking spreading or catching COVID-19 as noon else would or could use such Pipe. Defendant Jeff Brown, who is charged with providing for and protecting residents religious rights, replied to this request over two months later on July 29, 2020 denying this accommodation request effectively continuing to completely deny petitioner his right to pray according to the dictates of his beliefs.

(h)     On May 26th after former President Trump announced that religion was considered an "Essential Business" petitioner again submitted a request to obtain a Personal Prayer Pipe. Defendant Jeff Brown responded on July 29, 2020 again denying this accommodation request.

Petitioner believes in and practices the ways of the Native American beliefs. Petitioner is an Independent Call-out here in SPTP(one of three such call-outs). Gray Wolf is intertribal but mostly follows the Cherokee and Lakota ways. The use of the Sacred Pipe (Chanupa) and tobacco are a very fundamental and essential aspect of his religion and its belief system. It is believed by petitioner(and most Natives generally) that it is the smoke from the Sacred tobacco that carries his prayers and energy to Grandfather and his ancestors and this is how he is to pray.

On or about March 18, 2020 Defendants Haliegh Bennett posted a notice that due to COVID-19 all religious call-outs and religious activities were canceled until further notice. Effectively cancelling religion.

Petitioner then again asked defendants Jeff Brown and Haleigh Bennett for authorization "during COVID pandemic only" to be allowed to purchase a Personal Prayer Pipe to be held and kept in the Chaplain's office (defendant Jeff Brown) when not in use. These defendants continued to deny these requests effectively denying SPTP Native residents the right and ability to pray. These requests were continuously denied even though this can be done safely and with social distancing. Meanwhile Smudging was allowed which requires residents to be closer than they need to be to Pray with the Chanupa (Pipe).

Thus for over a full year all defendants refused to allow petitioner to Pray. These denials continued in spite of efforts to compromise while adhering to social distancing and safety precautions for CIVID.

The position of the defendants was and has been, that they are allowing "liquid smudge"(a liquid form of sage in a spray bottle) and that allowing this fulfills petitioner's religious needs and tenets. Defendants refuse to acknowledge that while daily Smudge is also an essential aspect of petitioner's beliefs, smudging is a cleansing process in which one cleans himself of negative energies and spirits in order to be able to properly present himself and his prayers to the Creator, ebter Sacred land and the like, but this is not in itself personal prayer or praying.

(2.)   In January 2021 Defendants Bennett and Dipman posted a memo update on call-out activities as things started to open back up. In fine print at the bottom of this memo was the following notation:"Daily Smudge will be allowed during yard/fresh air breaks." However, over the next many months until sometime in July 2021 in spite of petitioner's many attempts to do so there was no daily smudge. This is because defendant Tonya Taylor placed the responsibility on Activity Therapy staff who would not and could not get the lighter from LSH Security so we could smudge. Petitioner filed multiple grievances between January 21, 2021 and July 2021 on this lack of smudge and each time petitioner received responses such as "I am working on this"; "I believe I have identified the problem"; and "I have notified CTS staff". In spite of these responses there was still no smudging allowed between January 21, 2021 and July 2021.

   (a)   Between January 2021 and July 2021 petitioner met with defendant Taylor and defendant Brown about this several times. And still it took defendants and SPTP officials 7 (seven) months after posting notice that daily smudge would resume before petitioner was actually allowed to smudge regularly. This shows an indifference to petitioner's religious needs and rights. And is a failure to meet petitioner's care and treatment needs as all of the defendants listed are responsible for and obligated to provide for all of petitioner's needs including spiritually. During this entire time period(March 2020 to July 2021 the Defendants continued to also completely deny petitioner's ability to Pray as his beliefs dictate he is to Pray—through the Pipe and tobacco).

   (b) Defendants had and continue to use COVID-19 to simply outright cancel religion whenever they see fit regardless of any proposed or possible "Least Restrictive Measures" available. In particular, in May 2020 Petitioner's Uncle who was Kickapoo passed away. Taking COVID into consideration Petitioner asked for 15 to 20 minutes to be allowed to say a Prayer for his friend Paul Bluemenshine and Bobby Henderson to help their family cross over alone, without any peers knowing that a proper Passing Ceremony could not be done. This accommodation would have followed all of the guidelines the Government was citing(Social Distancing etc) as he would have been alone. Defendants already took petitioner during this time period alone to the same "concrete court yard" for 3 Fresh Air Breaks a day for 15 minutes at a time. Defendants Haleigh Bennett, Unit Leader Erica Brown, and Jeff Brown denied this simple accommodation request. Instead Defendant Jeff Brown(the Chaplain) simply offered to "come pray with you" when defendant Brown is not Native and would not allow proper prayer with Pipe and tobacco.

(3.)

Even after defendants created the policy that allowed for purchase and use of Personal Pipes as a direct result of COVID-19 concerns, defendants, Haleigh Bennett, Jeff Brown and Lisea Dipman continue to cancel, deny and restrict petitioner's ability to practice the fundamental tenets of his religious beliefs.

(a)     In or about June 2021 SPTP began allowing residents to buy and use Personal Pipes. However, unlike before COVID-19 shut things down, now defendants began cancelling and, or severely restricting religious call-outs.

(1)     Before COVID-19 the Native American call-outs were given two and one half hours a week for Pipe and Drum ceremonies, and 30 minutes a day to smudge; One weekend day per month these call-outs were given from 8:00am to 2:30pm to have and participate in the Sweat ceremony. These religious activities occurred even at the same time other residents had visits with their visitors in the "A Mod" right next to the religious grounds.

(2)     After SPTP started allowing religion again this time was restricted at first to just 30-minutes once a week to Smudge. This later became 1-hour a week just to Smudge(no Pipe). Later SPTP allowed the use of Pipes and tobacco but still only one hour per week.

(b) However, call-outs were canceled more than they were allowed.

(c) Then in an attempt to "accommodate all residents" if visits and call-outs "conflicted" with one another we were limited to just 30-minutes of worship those weekends. Somehow COVID has made it where—according to defendants—allowing us two and one half hours and at the same time as visits(even though there is no contact with the visitors by religious participants whatsoever) unfeasible to allow. Defendant Taylor has told petitioner that the "COVID Committee" will not allow more than an hour per week but none of the defendants will disclose all the parties on this alleged committee.

(4.)     Further unjustifiable an irrational restrictions on religion resumed as follows:

(a) On June 30, 2021 a resident escaped from SPTP and residents were placed on lock down until late in the day on July 1, 2021. However, SPTP allowed in person visits to resume on July 3rd and July 4th 2021, allowed resident VTP Kitchen workers to go back to work on July 4th 2021, and allowed Tier Two residents to resume outings as normal into the community. Defendants Tonya Taylor, Haleigh Bennett and Lesia Dipman further allowed residents to be transported from another building on Tuesday July 6th 2021 to use the Dillon yard to play softball. And classes and groups resumed as normal on July 6th 2021 as well.

(b)    While defendants allowed all of these activities to resume as normal right after the escape, the weekends of July 3rd and 4th 2021 and July 10th and 11th 2021 defendant Haleigh Bennett would not allow residents to have call-outs and worship. When Petitioner submitted a request to defendant Bennett asking why this happened defendant Kidd responded "To allow for the safety, security and operational needs of the facility."

(1)    In other words it was not unsafe or unsecure to allow everything else to go back to normal but allowing residents to worship would hinder and threaten the safety, security and operational needs of the facility—even though the resident who escaped was not a part of any call-out and did not use call-out as a way or means of his escape. There is no rational connection or even a slight nexus to call-outs and the escape.

(c)    The weekend of August 28th and August 29th 2021 defendant Haleigh Bennett canceled all religious call-outs that weekend so that a few residents could have a two-hour long in person, socially distanced visit.

(1)    When petitioner asked how visits are more protected than his religious rights and why call-outs were canceled defendant Bennett again simply replied with "Operation needs of the facility".

(**NOTE:** These particular cancellations are based on the fact that SPTP did not and does not have enough staff in order to allow both visitation and religion to occur. So petitioner's spiritual needs are set aside by defendants and denied and violated by defendants because of a lack of proper staffing.)

(5.)    The Sweat Lodge Ceremony is also an essential and fundamental aspect of Petitioner's religious beliefs and tenets. The Sweat ceremony is Sacred also like the Pipe ceremony. The Sweat is a spiritual cleansing process that is also physical as well. It requires commitment, fasting, prayer and more. Defendants have denied all such Sweat ceremonies since March of 2020 due to COVID-19.

(a) Before COVID, Petitioner as part of the Gray Wolf Call-out, participated in the Sweat every month it was held. Petitioner asserts that:

(1) These ceremonies occurred every third Saturday of the month from 8:00am to 2:30pm.;

(2) These ceremonies required certain tools and materials that in over 24 years that SPTP has existed have never been misused or used to hurt someone in any way. These materials are and were:

(a) 1-Heavy Duty Tarp;

(b) At least 2-Solid black Tarps (because the Lodge is dark like the Mother's womb and when exiting the Lodge we are new again).;

(c) A Pitch Fork rake which had a solid metal bar welded over the tips so they were not sharp at all. This was used to carry the hot rocks into the Lodge.;

(d) Shovel to tend the fire and carry/transport rock.;

(e) Fire pit and a fire(to heat the rock).;

(f) Nearby water hose. To put out the fire as well as to douse ourselves afterward and to stay cool in the hotter months of the year.

Defendant Bennett confiscated all of the tools listed above once COVID-19 shut things down claiming that all of a sudden these items were now a safety and security risk even though they never had been in over two decades. Not even once. Defendant Taylor now is telling petitioner and his like-minded peers that they may never be allowed to have this cleansing ceremony again and that if they are allowed to have Sweats the Lodge can no longer be covered with a black tarp but that it must be clear. This completely erodes the significance of the reason why such a Lodge is dark.

(6.)    Even after allowing residents, including petitioner, to purchase and to use their own Personal Pipe once per week, defendants still take advantage of any reason to deny the use thereof.

(a) While this may be the first example it is none the less important in showing the overall indifference of petitioner's religious rights and beliefs:

(1) On September 9, 2021 the unit petitioner resides on(Dillon East 1) was placed under "quarantine" after one of the staff who had worked this unit tested positive for COVID. As a result defendant Bennett canceled call-out activities the weekend of September 11th and 12th 2021 for the entire unit except for Smudging—No Pipe. When Petitioner and other members attempted to question defendant Bennett on this she would not speak with petitioner or any resident about it.

(a) There is no more or less separation between residents for and during Smudge than if the use of the Pipe would have been allowed. The only differences would be that there would be the Pipes and that only the one each Pipe belongs to would use it. Thus the denial of any accommodation by request of petitioner of just allotting 30 minutes(as Haleigh Bennett had done under other circumstances) when staff as well as the chaplain(defendant Jeff Brown) were willing to come in to help, was done with complete and utter contempt of and indifference to petitioner's rights, beliefs and spiritual well being.

(7)    Defendants Jack Bowman, Haleigh Bennett and Lesia Dipman simply cite that SPTP policy allows call-outs to be cancelled for a plethora of reasons to include safety, security and operational needs of the facility. However, everyone of these defendants has and continues to refuse to explain how any of the accommodation requests by petitioner and his peers over the last 18-months would be or actually pose a threat to the safety, security and operational needs of the facility.

(1) Each of these defendants refuse to first even so much as consider **Less Restrictive Measures** when conflicts do arise, instead the only action they take is cancelations.

(a) For example(of many): On August 28th and 29th 2021 defendant Bennett cancelled call-out activities in favor of conducting visits because there were not enough staff that weekend to do both. Petitioner asked defendant Bennett to schedule a day later that week to make up for the missed

Page **7** of **9**

day of worship. Defendant Bennett's definitive answer was "No." I ask this court "Why not?" And the answer is plain: SPTP officials relish any excuse or reason no matter how trivial to cancel religious worship and acts. The SPTP policy even eludes to the fact that religion can be canceled for any reason by a number of people.

Therefore, Petitioner prays that the court finds the defendants' actions do in fact violate petitioner's religious rights guaranteed to him by State and constitutional laws as well as those of his peers as the are effect exactly the same as he is. In so doing, Petitioner prays that this court order these defendants to stop acting in ways that violate petitioner's Statutory rights under Kan.Sta.Ann. 59-29a22(b)(8) and the First and Fourteenth Amendments of the United States Constitution. Such actions may be acceptable in a prison and penal setting but these acts of indifference to these rights are not and can not be found to be acceptable in the civil and treatment setting for which petitioner and his peers are involuntarily civilly confined. (Hendricks, Crane, Woe v. Cuomo, Bell v. Wolfish et al.).

Therefore petitioner also prays that in so finding this court to order the following in relief and order that any further violations based on this courts decision in this case **shall** result in a finding of being in contempt of court and warning that the court can and will impose all appropriate punitive remedies against any named defendant found to violate this courts lawful order. Petitioner asks this because for too long SPTP officials have been allowed to ignore orders of courts with absolute impunity.

Petitioner therefore Prays this court grant the following in relief:

Order an injunction from defendants cancelling any more religious call-outs of weekly Pipe and Drum ceremonies "just because policy says they can" s they have done in the past and continue to do in the present;

Order the defendants by and through their representative agency to pay petitioner the following:

$75,000.00 in Punitive damages; and

$75,000.00 in compensatory damages

I, David Wayne Thayer Petitioner, hereby certify under penalty of perjury that the above is true and correct to my best of my layman's legal knowledge and understanding of law SO HELP ME GOD.

*David W. Thayer*
David W. Thayer (Pro Se)
1301 KS Hwy 264
Larned, Kansas 67550
(620) 285-4660 Extension 3

I, David Wayne Thayer, further hereby certify that I placed a true and correct copy of this Petition in the United States Mail Postage Paid or by institutional mail to the persons listed below on this __25__ day of _____April_____, __2022__.

| | |
|---|---|
| Clerk Of The U.S. district Court<br>401 N. Market<br>Wichita, Kansas 67203 | KDADS<br>C/O Legal Department<br>503 S. Kansas Ave.<br>Topeka, Kansas 66603 |
| Secretary Laura Howard<br>KDADS<br>503 S. Kansas Ave.<br>Topeka, Kansas 66603 | Marc Quillen<br>1301 KS Hwy 264<br>Larned, Kansas 67550 |
| Keri Applequist<br>1301 KS Hwy 264<br>Larned, Kansas 67550 | Haleigh Bennett<br>1301 K264 Hwy<br>Larned, Kansas 67550 |
| Lesia Dipman<br>1301 KS Hwy 264<br>Larned, Kansas 6750 | Chaplain Jeff Brown<br>1301 KS Hwy 264<br>Larned, Kansas 67550 |
| Jack Bowman<br>1301 KS Hwy 264<br>Larned, Kansas 67550 | |