UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS



| | |
|---|---|
| Michael R. Chubb; David W. Thayer,<br>　　　　　　　　　　Plaintiff(s),<br><br>v.<br><br>Laura Howard, Secretary of the Kansas Department for Aging and Disability Services; Lesia Dipman, Larned State Hospital (LSH), Superintendent; Jeff Brown, LSH Chaplain; Keri Applequist, Sexual Predator Treatment Program (SPTP), Assistant Clinical Director; Haleigh Bennett, SPTP Interim Program Director; Linda Kidd, SPTP Program Leader.<br>　　　　　　　　　　Defendant(s). | Case Number: 22–3086–SAC<br><br>AMENDED COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF. 42 USC 1983 |

## 42 U.S.C 1983 CIVIL RIGHTS AMENDED COMPLAINT

Plaintiffs, David W. Thayer, *pro se.,* allege and state the following:

### PRELIMINARY STATEMENT

COMES NOW, Petitioner David Thayer, Pro-se and submits his amended complaint pursuant to this court's order stating that he failed to list all the defendants in the caption of his case. Plaintiff hereby states that he has amended his complaint to properly list all named defendants.

### DEFENDANTS

**1. Laura Howard**, is the Secretary of the Kansas Department for Aging and Disability Services and responsible for Plaintiff's Care and Treatment and establishing policies concerning the operation of Larned State Hospital (LSH).

**2. Lesia Dipman**, is the Superintendent of Larned State Hospital where Plaintiff resides and is involuntarily committed for control, care and treatment.

**3. Jeff Brown,** is the Chaplain for Larned State Hospital and is responsible for protecting and facilitating the Plaintiff's religious rights. Defendant Brown stands accused of conspiring with Defendants Bennett, Kidd, and Fisher to unlawfully restrict Plaintiff's religious rights.

**4. Keri Applequist,** is the Assistant Clinical Director for the Sexual Predator Treatment Program at Larned State Hospital. Defendant Applequist is responsible for facilitating Plaintiff's care and treatment and stands accused of conspiring with Defendants Bennett, Kidd, and Fisher to unlawfully restrict Plaintiff's religious rights.

**5. Haleigh Bennett,** is the Sexual Predator Treatment Program's (SPTP) Interim Program Director and the SPTP Program Manager. She is responsible for managing the day to day operations of the program and stands accused of conspiring with Defendants Kidd, Applequist, and Fisher to unlawfully restrict Plaintiff's religious rights.

**6. Linda Kidd,** SPTP Program Leader; has the responsibility of assisting the Program Manager and overseeing the daily operations of the individual SPTP departments. Defendant Kidd stands accused of conspiring with Defendants Bennett, Applequist, and Fisher to unlawfully restrict Plaintiff's religious rights.

## FACTUAL ALLEGATIONS

1. All of the above named defendants are directly responsible for ensuring that the Petitioner's statutory and constitutional rights are protected and as such are responsible for taking proper action(s) when such rights are violated or denied to petitioner.

2. Petitioner brings this action on behalf of and for himself as well as all residents in SPTP who believe in and practice the Native American path who are members of the Grey and Red Wolf Call-Out and to include the independents, here in the Sexual Predator Treatment Program (SPTP) as any decision for or against petitioner will ultimately affect these residents as well.

3. Petitioner states that his constitutional and statutory rights to practice his religion are being and have been violated and denied to him and his fellow Native residents under and contrary to Kan.Stat.Ann. 59-29a22(b)(8) and the First Amendment of the United States Constitution and RLUIPA. Petitioner further asserts that there has been a repeated and continuing deliberate indifference by the named defendants to religion and religious rights, beliefs and practices.

4. Petitioner further asserts the Secretary of KDADS (defendant Laura Howard) refuses to take any actions against SPTP officials, namely the defendants listed in this suit, even though defendant Laura Howard is responsible for ensuring our rights pursuant to Kan. Stat. Ann. 59-29a22 are not violated.

5. Kan. Stat. Ann. 59-29a22(b)(8) states in pertinent part: "Sexually violent predators; rights and rules of conduct; definitions... (b) Each person shall have the following statutory rights... (8) To individual religious worship within the facility if the person desires such an opportunity, as long as it complies with applicable laws and facility rules and policies..."

6. LSH-SPTP Policy P9-06 list the religious rights and guidelines for persons in LSH/SPTP (See enclosed copy for record). Nowhere in this does it give LSH/SPTP staff the authority to restrict or deny a person's religious freedoms and rights in whole or in part.

7. Kan. Stat. Ann. 59-29a22 lists specific rights that can be restricted or denied for cause and states the procedures that must be followed when such rights are denied or restricted. Religion and religious freedoms is not one of those rights that can be denied or restricted per this statute. Therefore the Defendants have no legal authority to completely or even partially deny or restrict petitioner's right to pray according to his sincerely held beliefs as they have done and continue to do. (See Kan. Stat. Ann. 59-29a22(c)(1) "a person's rights under this subsection (b)(15) to (b) (22) may be denied for cause by the superintendent of the facility or the

superintendent's designee, or when medically or therapeutically contraindicated as documented by the person's physician, licensed psychologist or licensed master's level psychologist in the persons treatment record..." Petitioner hereby asks this court to take note of the fact that, per this state law, only the rights listed from (b)(15) to (b)(22) can be restricted or denied and that would conclude that and imply that (b)(8) is not included and cannot be denied or restricted.

8. In March of 2020 Defendants Haleigh Bennett, Lesia Dipman, and Linda Kidd, implemented an unpublished "memo" that due to COVID-19 all call-out activities, including religious meals were suspended. These defendants did not publicly publish the first official "memo" available to SPTP residents regarding this decision until April 1st, 2020. Since then these defendants have posted multiple memos easing and the tightening of these restrictions. However, each time until late 2021, the right to pray according to my religious beliefs dictated through use of a pipe and tobacco was continually denied. Defendants made no effort to accommodate this religious tenet until after petitioner initially filed this complaint later in 2020 even though they were given multiple ways to safely to do so in the least restrictive means ((See copies of all posted memos regarding call-outs and COVID-19).

9. On June 27th, 2020 Petitioner filed a grievance after being denied his request to be allowed to go out and say a prayer (which would include Smudging and the use of the pipe and tobacco). This would have been no different than staff taking petitioner to the same area where he was being given his 3 Fresh Air breaks a day by himself. Since petitioner would have been by himself, he therefore would have been "socially distanced". However, defendants Haleigh Bennett and Jeff Brown denied his request. When petitioner then asked if he could just Smudge alone this was also denied.

10. On may 25th, 2020, several months after SPTP shut everything down because of the COVID-19 Petitioner submitted a request to treatment team asking for authorization to purchase

a Personal Pipe so petitioner could make his prayers in accordance with his fundamental and sincerely held religious beliefs without risking spreading or catching COVID-19 and no one else would or could use such Pipe. Defendant Jeff Brown, who is charged with providing for and protecting residents religious rights, replied to this request over two months later on July 29th, 2020 denying his accommodation request effectively continuing to completely deny petitioner his rights to pray according to the tenets of his faith.

11. On May 26th, of 2020 after former President Trump announced that religion was considered "Essentials Business" petitioner again submitted a request to obtain a personal prayer pipe. Defendant Jeff Brown responded on July 29th, 2020 again denying this accommodation request.

12. Petitioner believes in and practices the ways of the Native American beliefs. Petitioner is an independent call out here in SPTP (one of three such call outs). Grey Wolf is inter tribal but mostly follows the Cherokee and Lakota ways. The use of the Sacred Pipe (Chanupa) and tobacco are a very fundamental and essential aspect of his religion and its belief system. It is believed by Petitioner (and most Natives generally) that it is the smoke from the Sacred tobacco that carries his prayers and energy to Grandfather and his ancestors and this is how he is to pray.

13. On or about March 18th, 2020 Defendants Haleigh Bennett posted a notice that due to the COVID-19 all religious call-outs and religious activities were canceled until further notice. Effectively canceling religion.

14. Petitioner then again asked defendants Jeff Brown and Haleigh Bennett for authorization "during COVID pandemic only" to be allowed to purchase a Personal Prayer Pipe to be held and kept in the Chaplain's office (defendant Jeff Brown) when not in use. These defendants continued to deny these request effectively denying SPTP Native residents the right and ability to pray. These requests were continuously denied even though this can be done safely and with

social distancing. Meanwhile Smudging was allowed which requires residents to be closer than they need to be to pray with the Chanupa (pipe).

15. Thus, for over a full year all defendants refused to allow petitioner to Pray. These denials continued in spite of efforts to compromise while adhering to social distancing and safety precautions for COVID.

16. The position of the defendants was and has been, that they are allowing "liquid smudge" (a liquid form of sage in a spray bottle) and that allowing this fulfills petitioner's religious needs and tenets. Defendants refuse to acknowledge or respect that while daily Smudge is also an essential aspect of petitioner's beliefs, smudging is a cleansing process in which one cleanses himself of negative energies and spirits in-order to be able to properly present himself and his prayers to the Creator, enter sacred buildings, lands and ceremonial gatherings...But this is not in itself a personal prayer or praying.

17. In January 2021 Defendants Bennett and Dipman posted a memo update on call-out activity as things started to open back up. In fine print at the bottom of this memo was the following notation: "Daily Smudge will be allowed during/yard/fresh air breaks". However, over the next many months until sometime in July 2021 in spite of petitioner's many attempts to do so there was no daily smudge. This is because defendant Tonya Taylor placed the responsibility on Activity Therapy staff who would not and could not get the lighter from LSH security so we could smudge. Petitioner filed multiple grievances between January 21, 2021 and July 2021 on this lack of smudge and each time petitioner received responses such as "I am working on this"; "I believe that I have identified the problem"; and "I have notified CTS staff". In spite of these responses there was no smudging between January 21, 2021 and July of 2021.

18. Between January 2021 and July 2021 petitioner met with defendant Taylor and defendant Brown about this several times. And still it took defendants and SPTP officials 7 (seven) months

after posting notice that daily smudge would resume before petitioner was actually allowed to smudge regularly. This shows an indifference to petitioners religious needs and rights, and is a failure to meet petitioners care and treatment needs as all of the defendants listed are responsible for and obligated to provide for all of petitioner's needs including his spiritual needs. During the entire time period (March 2020, to July of 2021) the defendants continued to also completely deny petitioner's ability to pray and his beliefs dictate he is to pray—through the use of the pipe and tobacco.

19. Defendants had and continued to use COVID-19 to simply cut out petitioner's right to practice his religion and, to add, the defendants would cancel religious gatherings for all outside call-outs, whenever it was a convenience to them, regardless of any proposed or possible "Least Restrictive Measures" available. In Particular, in May 2020 Petitioner's Uncle, who was Kickapoo, and two of his best and dearest friends, had passed away. Taking COVID into consideration, petitioner had asked for 15 to 20 minutes outside to hold a small passing ceremony, as it was his tribal and sacred duty to help their spirits cross over. This accommodation would have followed the proper applications and federal guidelines of "social distancing" etc... as petitioner would have been alone under the supervision of staff. This would not have been outside facility guidelines as Defendants were already taking petitioner outside to the same court yard three times a day for 15 minutes fresh air breaks. Defendants Haleigh Bennett, unit leader Erica Brown, and Chaplain Jeff Brown denied this simple accommodation request. Instead Defendant Jeff Brown simply offered to come and pray a private christian prayer with Petitioner while refusing to allow a Native prayer with pipe and tobacco.

20. Even after Defendants created the policy that allowed for purchase and use of Personal Pipes as a direct result of COVID-19 concerns, defendants, Haleigh Bennett, Jeff Brown, Lesia

Dipman, continue to cancel, deny and restrict petitioner's ability to practice the fundamental tenets of his religious beliefs.

21. On or about June 2021, SPTP began allowing residents to buy and use Personal Prayer Pipes. However, unlike before, COVID-19 shut things down. Now defendants began cancelling, and or severely restricting, religious callouts.

22. Before COVID-19 the Native American callouts were given two and one half hours a week for Pipe and Drum ceremonies, and 30 minutes a day to Smudge; One weekend day per month these callouts were given from 8am to 2:30pm to have and participate in the Sweat Lodge ceremonies. These religious activities occurred even at the same time other residents had visits with their visitors in the "A Mod" right next to the religious grounds.

23. After SPTP started allowing religious activities again, it was restricted to just Smudging and to 30 minutes once a week. Then it was modified to became 1 hour a week. Later SPTP began to allow Pie and Drum ceremonies but, still limited the duration to just one hour per week. Special ceremonies for such things as passings and holidays were still not allowed.

24. Callouts were cancelled for no reason more times than they were allowed.

25. Then, all callout durations were modified and limited to just 30 minutes in an attempt to "accommodate all residents" in the event visits and callouts "conflicted" with one another. Somehow COVID has made it where – according to defendants – allowing two and a half hours at the same time as visitation (even though there is no contact between visitors and religious callout groups) was unfeasible and untenable. Although members of the "COVID Committee" were never identified, Defendant Taylor stated that the COVID Committee would not allow more than an hour per week for callouts.

26. Further unjustifiable, an irrational restriction on religious activities resumed as follows:

27. On June 30, 2021, a resident escaped from SPTP and residents were placed on lockdown. Personal visits, VTP work assignments, and Tier two outings into the community, resumed on July 3rd. On July 6th, residents from Jung building were transported to Dillon for softball and all classes and groups resumed. However, Native American religious activities were still denied.

28. While defendants allowed all of these activities to resume as normal right after the escape, the weekends of July 3rd and 4th 2021 and July 10th and 11th 2021 defendants Haleigh Bennett would not allow residents to have call-outs and worship. When petitioner submitted a request to defendant Bennett asking why this happened, defendant Kidd responded "To allow for the safety, security and operational needs of the facility."

29. In other words it was not unsafe or unsecure to allow everything else to go back to normal but allowing residents to worship would hinder and threaten the safety, security and operational needs of the facility – even though the resident who escaped was not a part of any call-out and did not use call-out as a way or means of his escape. There is no rational connection or even a slight nexus to call-outs and the escape.

30. The weekend of August 28th and August 29th 2021 defendant Haleigh Bennett canceled all religious call-outs that weekend so that a few residents could have a two-hour long in person, socially distanced visit.

31. When petitioner asked how visits are more protected than his religious rights and why call-outs were canceled defendant Bennett again simply replied with "Operational needs of the facility".

32. (NOTE: These particular cancellations are based on the fact that SPTP did not and does not have enough staff in order to allow both visitation and religion to occur. So petitioner's spiritual needs are set aside by defendants and denied and violated by defendants because of a lack of proper staffing.)

33. The Sweat Lodge Ceremony is also an essential and fundamental aspect of petitioner's religious beliefs and tenets. The Sweat ceremony is Sacred also like the pipe ceremony. The Sweat6 is a spiritual cleansing process this is also physical as well. It requires commitment, fasting prayer and more. Defendants have denied all such Sweat5 ceremonies since March of 2020 due to COVID-19.

34. Before COVOD, petitioner was part of the Gray Wolf Call-out, participated in Sweat Lodge ceremonies every month it was held. Petitioner asserts that:

35. These ceremonies occurred every third Saturday of the month from 8:00am to 2:30pm;

36. These ceremonies required certain tools and material that is over 24 years that SPTP has existed have never been misused or used to hurt someone in any way. These materials are and were:

   a. 1-Heavy Duty Tarp;

   b. At least 2-Solid black Tarps (because the Lodge is dark like the Mother's womb and when exiting the Lodge we are new again);

   c. Pitch fork which had a solid metal bar welded over the tips so they were not sharp at all. This was used to carry the hot rocks into the Lodge;

   d. Shovel to tend the fire and carry/transport rock;

   e. Garden rake used for maintaining the fire

   f. Fire pit and a fire to (heat the rock)

   g. Nearby water hose. To put out the fire as well as douse ourselves afterward and to stay cool in the hotter months of the year.

37. Defendant Bennett confiscated all of the tools listed above once COVID-19 shut things down claiming that all of a sudden these items were now a safety and security risk even though they never have been in over two decades. Not even once. Defendant Taylor now is telling

petitioner and his like-minded peers that they may never be allowed to have this cleansing ceremony again and, if they are, then the Lodge can no longer be covered by a black tarp, has to be clear, see thru. This requirement would cause significant distractions during prayer, destroy petitioner's spiritual privacy, and erodes the significance of keeping the Sweat Lodge in total darkness.

38. Even after allowing residents, including petitioner, to purchase and use their own personal pipes once a week, defendants still take advantage of any reason to deny the use thereof.

39. While this may be the first example it is none the less important in showing the overall indifference of petitioner's religious rights and beliefs.

40. On September 9th of 2021, the unit petitioner resided on was placed under "quarantine" after one of the staff who temporarily worked the unit tested positive for COVID-19. As a result Defendant Bennett canceled all religious call-outs for the weekend, except for Smudging. Decidedly, the whole reason for purchasing individual prayer pipes to prevent COVID spread was pointless. When the petitioner and other Native call-out members approached Defendant Bennett she flat out refused to talk about the callouts or reschedule the cancelled Pipe and Drum Ceremonies.

41. There is no more and less separation between Native callout members during Smudge than there is during the use of the pipe. Thus the complete refusal and accommodation by request of petitioner when staff, as well as the Chaplin, were willing to come in and help, was done with complete and utter contempt of and indifference to petitioner's rights, beliefs, and spiritual well being.

42. Defendants Haleigh Bennett and Lesia Dipman simply cite that SPTP policy allows call-outs to be canceled for a plethora of reasons to include safety, security and operational needs of the facility. However, all of the Defendants have and continue to refuse to explain how any

accommodation request by petitioner and his peers over the last 18 months posses or actually would be a threat to the safety, security, and operational needs of the facility.

43. Each of the defendants refuse to even consider the Less Restrictive Measures when conflicts do arise, instead the only action taken against the call outs is to always cancel them for convenience.

44. For example: On August 28th and 29th of 2021 Defendant Bennett canceled call-out activities in favor of conducting visits because there were not enough staff that weekend to do both. Petitioner asked defendant Bennett to schedule a day later that week to make up for the missed day of prayer and worship. Defendant Bennett's definitive answer was "NO". We do ask these courts why not? And the answer is plain: SPTP officials relish any excuse or reason no matter how trivial to cancel religious worship and acts. The SPTP policy even alludes to the fact that religion can be canceled for any reason by any number of people.

Therefore, Petitioner prays that this court finds the defendants actions do in fact violate petitioner's religious freedom and rights guaranteed to him by the United States Constitution and the Kansas Bill of Rights Section 10, mandated right to practice petitioners freedom to worship and pray and that his peers are affected as well and are asking these honorable courts to hold the defendants responsible for their action's as acting under the color of State Law, a showing of prejudicial indifference concerning the right to practice in and worship of prayer. The Statutory rights of petitioner and his peer's rights pursuant to KSA 59-29a22(b)(8) and the 1st and 14th Amendment of the United State Constitution The rights to worship and pray and under the 14th Amendment The right to Due Process when a conflict has risen.

Such actions may be acceptable in prison and a penal setting, but these act if the indifference to these rights are not and cannot be found to be acceptable in a civil commitment setting for

which the Petitioner and his Peer's that are civilly confined see (Hendricks, Crane, and Bell v. wolfish)

Therefore, petitioner also prays that in so finding that this court to order the following relief and order that any further violations based on this court's decision in this case shall result in a finding, of being in contempt of court and warning that the court can and will impose all appropriate punitive remedies against any defendant found to violate this court lawful order. The Petitioner asks of this because the defendants have far too long continue to violate all parties, protected right to the freedom of practice our religion and to worship and prayer.

Petitioner therefore prays that this court grants the following relief:

1) To order an injunction from the defendant's capability of canceling religious call outs

i.e.: Pipe and drum ceremony etc "just because they can" per their policies is not a sufficient answer to support canceling any call outs.

2) To order the defendants to pay through their representative agency the following:

    a) 75,000.00 for punitive damages and:

    b) 75,000.00 in compensatory damages

*David W. Thayer*
David W. Thayer, Pro Se.
1301 KS Highway 264
Larned, Kansas
67550

## **CERTIFICATE OF SERVICE**

I, David W. Thayer, hereby certify on this **Monday, July 25, 2022**, that a true and correct copy of the above and forgoing "**42 U.S.C 1983 Civil Rights Amended Complaint**" was mailed to all parties by placing said documents, postage prepaid, into the hands of staff at Larned State Hospital, Dillon, East 1, in a properly addressed sealed envelope addressed to the following recipients:

United States District Court
444 SE Quincy Rm. 490
Topeka, Kansas
66683

*[signature]*
David W. Thayer, *pro. se.*,
1301 KS Highway 264
Larned, Kansas 67550
Tel: (620) 285-4660 Ext #1