## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DAVID W. THAYER,

                            Plaintiff,                    Case No. 22-3086-DDC

v.

LAURA HOWARD, HALEIGH
BENNETT, JEFF BROWN, LESIA
DIPMAN, and LINDA KIDD,

                            Defendants.

## MEMORANDUM AND ORDER

This case is about religious restrictions in a state-run inpatient psychiatric hospital. Pro se plaintiff David W. Thayer,[1] an inpatient at Larned State Hospital, sued defendants—all Kansas state officials and hospital administrators—contending they unlawfully restricted his right to practice his Native American religion. Plaintiff sues defendants Laura Howard, Haleigh Bennett, Jeff Brown, Lesia Dipman, and Linda Kidd in their official and individual capacities under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and 42 U.S.C. § 1983 for violating his First and Fourteenth Amendment rights. He also claims that defendants violated state law, specifically, Section 10 of the Kansas Constitution Bill of Rights and Kan. Stat. Ann. § 59-29a22(b)(8). Plaintiff seeks monetary damages, injunctive relief, and punitive damages.

---

[1] Because plaintiff filed his suit pro se, the court construes his filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't serve as a pro se plaintiff's advocate. *See id.* Plaintiff's pro se status doesn't excuse him from complying with the court's rules or facing the consequences of noncompliance. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

Defendants filed a Motion for Summary Judgment (Doc. 48).  Their motion argues:  (1) state sovereign immunity blocks plaintiff's official capacity, monetary damages claims under § 1983; (2) plaintiff's First Amendment § 1983 and RLUIPA claims for injunctive relief fail because plaintiff hasn't adduced any evidence that could support a finding that defendants substantially burdened plaintiff's ability to practice his religion; and (3) the court should decline to exercise its supplemental jurisdiction over the remaining state law claims.  Plaintiff hasn't responded to defendants' motion.  The court grants defendants' Motion for Summary Judgment (Doc. 48) for the reasons below.

## I.        Background

The following facts either are stipulated in the Pretrial Order (Doc. 45), uncontroverted, or where genuinely controverted, viewed in the light most favorable to plaintiff—the party opposing summary judgment.  *Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

Larned State Hospital (LSH) is a psychiatric hospital run by the state of Kansas.  Doc. 49-1 at 2 (Dipman Decl. ¶¶ 6–7).  It has distinct treatment programs, including the Sexual Predator Treatment Program (SPTP)—an in patient program for convicted sex offenders who have completed their prison sentences but nonetheless the courts have determined are violent sexual offenders in need of involuntary inpatient treatment.  *Id.* (Dipman Decl. ¶ 10); Doc. 49-2 at 2 (Rop Decl. ¶ 6).  Plaintiff has resided in the inpatient housing at LSH in the SPTP since 2003.  Doc. 49-1 at 3 (Dipman Decl. ¶ 13); Doc. 49-2 at 3 (Rop Decl. ¶ 11).

LSH accommodates resident religious practices spanning multiple denominations (Asatru, Christian, Druid, Jewish, Muslim, Native American, Rastafarian, Satanist, and Wiccan).  Doc. 53 at 2 (Brown Decl. ¶ 7).  Plaintiff is a member of the Independent Native American religion.  *Id.* at 15 (Brown Decl. ¶ 32).  The Native American religious activities at LSH include

smudging,[2] pipe-and-drum ceremonies, sweat lodge ceremonies, healing and passing

ceremonies, pow-wows, and special meals for holidays.  *Id.* at 16–17 (Brown Decl. ¶¶ 39, 45).

In March 2020, LSH created a "Pandemic Preparedness Plan" aimed at avoiding and

managing COVID-19 transmission and infection within the hospital.  Doc. 49-1 at 3–4 (Dipman

Decl. ¶¶ 17–18).  LSH modified and updated the plan over time, depending on the COVID-19

infection levels at the hospital, the surrounding county, and the state.  *Id.* at 4 (Dipman Decl.

¶ 19).  Those restrictions applied to all religious activities and they always permitted residents to

conduct individual religious services regardless of the restriction phase.  *Id.* at 3–4 (Dipman

Decl. ¶ 18).  Phase A, the most restrictive plan, suspended all group activities.  Doc. 49-4 at 4–5

(Bennett Decl. ¶ 22).  Residents still could gather in socially distanced, small groups of ten or

less for "fresh air breaks."  *Id.*  Phase B permitted groups of 15 or fewer to gather for 30 minutes

if residents socially distanced and wore masks.  *Id.*  Phase C permitted groups of 30 or fewer to

gather for an hour, so long as the residents socially distanced and masked.  *Id.*  To prevent the

spread of COVID-19, LSH closed the cafeteria.  *Id.* at 9 (Bennett Decl. ¶ 38).  It remains closed

and residents still eat in their rooms or in a commons area in their living unit.  *Id.*

These restrictions, among other LSH and SPTP policies at the time, affected residents

who practiced Native American religions.  For example, plaintiff and other adherents to Native

American religion couldn't perform sweat lodge or pipe ceremonies under Phases A, B, or C

because those ceremonies couldn't accommodate social distance and masking.  *Id.* at 4–5

(Bennett Decl. ¶ 22).  And even once the COVID-19 phases ended, residents who practiced

Native American religions briefly lacked access to a sweat lodge to perform the ceremony for a

variety of reasons.  *Id.* at 12 (Bennett Decl. ¶ 58).  SPTP adopted a policy that allowed Native

---

[2]     Smudging is an activity that involves burning sage.  Doc. 53 at 18 (Brown Decl. ¶ 48).

American religious residents to purchase and use "liquid smudge"—a smokeless smudge spray—instead of their normal smudging practice. Doc. 53 at 18 (Brown Decl. ¶¶ 46–47). And LSH adopted a policy forbidding shared prayer pipes to reduce the risk of communicable diseases. Instead, each resident could purchase their own individual pipe. *Id.* at 20 (Brown Decl. ¶ 57).

LSH ended its COVID-19 phase plan in June 2023. Doc. 49-1 at 4 (Dipman Decl. ¶ 20). Currently, residents adhering to Native American religions may smudge daily, conduct pipe and drum ceremonies weekly, conduct sweat lodge ceremonies monthly, participate periodically in special meals for holidays, and conduct healing and passing ceremonies. Doc. 53 at 16 (Brown Decl. ¶ 39). Native American religious residents can replace monthly sweat lodge ceremonies with pow-wows. *Id.* at 17 (Brown Decl. ¶ 45).

Non-pandemic disturbances sometimes interrupt regularly scheduled religious activities at LSH. During county burn bans, LSH would limit smudging, pipe ceremonies, or sweat lodge ceremonies because these activities increased the risk of wildfire. Doc. 49-4 at 14–16 (Bennett Decl. ¶¶ 65–72). LSH also limited religious activities when it lacked sufficient staff to supervise residents. Doc. 49-5 at 4 (Kidd Decl. ¶ 24). These limitations affected sweat lodge ceremonies—where residents use rakes or modified pitchforks to move hot stones from an open fire into the lodge—because the ceremonies require increased staffing levels and trained staff. *Id.* at 4 (Kidd Decl. ¶ 21); Doc. 53 at 23 (Brown Decl. ¶ 80). It also affected frequent requests for healing and passing ceremonies. Doc. 49-2 at 8 (Bennett Decl. ¶ 40).

In April 2022, plaintiff sued defendants Laura Howard (Kansas Department for Aging and Disability Services Secretary),[3] Lesia Dipman (LSH Superintendent), Jeff Brown (LSH Chaplain), Haleigh Bennett (LSH Chief Operations Officer), and Linda Kidd (SPTP Program Leader), for restrictions to plaintiff's religious exercise.  Doc. 1 (Compl.); Doc. 45 (Pretrial Order).  He contends that LSH has restricted and continues to restrict smudging, sweat lodge ceremonies, communal meals, pipe and drum ceremonies, and healing and passing ceremonies.  Doc. 45 at 3 (Pretrial Order ¶ 3.a.ii.).  Plaintiff requests injunctive relief mandating eight hours of sweat lodge time and double portions of traditional meals.  *Id.* at 9 (Pretrial Order ¶ 5).  He also seeks compensatory and punitive monetary damages from defendants' "representative agency"— *i.e.*, awards against defendants in their official capacities.  *Id.*  Plaintiff brings claims under:  (1) § 1983 for violating his First Amendment and Fourteenth Amendment rights; (2) the Religious Land Use and Institutionalized Persons Act (RLUIPA); (3) the Kansas Constitution Bill of Rights;[4] and (4) Kan. Stat. Ann. § 59-29a22(b)(8).[5]  *Id.* at 7 (Pretrial Order at ¶ 4.a.).  Defendants object and filed a Motion for Summary Judgment (Doc. 48).  Plaintiff hasn't responded to this motion.

---

[3]     The Kansas Department for Aging and Disability Services Secretary supervises LSH and has custody over individuals in the Sexual Predator Treatment Program.  Kan. Stat. Ann. §§ 59-29a01, 59-29a22(a)(1)(B); Doc. 49-1 at 2 (Dipman Decl. ¶ 6).

[4]     Plaintiff asserts that defendants' actions violate his "religious freedom and rights guaranteed to him by . . . the Kansas Bill of Rights Section 10[.]"  Doc. 45 at 7 (Pretrial Order ¶ 4.a.i.).  But section 10 of the Kansas Constitution Bill of Rights references criminal prosecution protections—not religious rights.  Kan. Const. Bill of Rts. § 10.

[5]     Kan. Stat. Ann. § 59-29a22(b)(8) entitles each person in SPTP custody to "individual religious worship within the facility if the person desires such an opportunity, as long as it complies with applicable laws and facility rules and policies."

## II.      Legal Standard

Under Fed. R. Civ. P. 56(a), a party may move for summary judgment by "identifying each claim . . . on which summary judgment is sought" and showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1460 (D. Kan. 1995).  When it applies this standard, the court "view[s] the evidence and make[s] inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation and internal quotation marks omitted).  To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim."  *Id.* (citation and internal quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Liberty Lobby*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by

reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.*

Finally, summary judgment isn't a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327.  Instead, it serves an important procedural role, one, "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

Here, defendants' summary judgment motion is unopposed.  On September 8, 2023, defendants filed a Motion for Summary Judgment.  Doc. 48.  The next day, defendants also served on plaintiff a Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment, as our court's local rules require.  Doc. 50; Doc. 51.  The notice informed defendant that if he did "not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendants, the court may accept defendants' facts as true, in which event [his] case may be dismissed and judgment entered in defendants' favor without a trial."  Doc. 50 at 2.  Under D. Kan. Rules 6.1(d)(1) and 7.1(c), plaintiff was required to respond to defendants' motion within 21 days, or by September 29, 2023.  Several weeks after that deadline passed, the court issued a Notice and Order to Show Cause to plaintiff, directing him to respond to defendants' motion by November 8, 2023.  Doc. 54.  That second deadline for plaintiff to respond has passed as well.  In short, plaintiff has failed to file any response to defendants' summary judgment motion.

Under D. Kan. Rule 7.1(c), if "a response is not filed by the applicable deadline, the court will consider and decide the motion as an uncontested motion."  Because plaintiff hasn't

responded to defendants' summary judgment motion or otherwise explained his failure to respond, the court "consider[s] and decide[s] the motion as an uncontested motion."  D. Kan. Rule 7.1(c).  But plaintiff's failure to respond to defendants' summary judgment motion— alone—doesn't furnish a sufficient basis to grant summary judgment to defendants.  *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).  Instead, the court still must determine whether judgment for the moving party is appropriate under Fed. R. Civ. P. 56.  *Id.*  Nevertheless, failing to respond to a summary judgment motion "waives the right to respond or to controvert the facts asserted in the summary judgment motion" and requires the court to "accept as true all material facts asserted and properly supported in the summary judgment motion."  *Id.*

### III.      Analysis

Plaintiff sues defendants for money damages, punitive damages, and for injunctive relief under 42 U.S.C. § 1983, RLUIPA, and Kansas state law.  The court begins with plaintiff's § 1983 claims, then turns to his RLUIPA claims, and ends with state law claims.

#### A.      Section 1983 Fourteenth Amendment Claims

Plaintiff sues defendants in their official and individual capacities under § 1983 for violating his Fourteenth Amendment due process rights.  Doc. 45 at 7–8 (Pretrial Order ¶ 4.a.). As a threshold matter, plaintiff can't sue defendants "in their individual capacity for injunctive or declaratory relief."  *Mallard v. Howard*, No. 22-4053, 2024 WL 726983, at *4 (D. Kan. Feb. 22, 2024).  The court thus dismisses this part of plaintiff's request.  As a second threshold matter, plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment unless plaintiff seeks prospective injunctive relief.  The court explains this rule in more detail, below.  But for now, it's enough to know that the court must dismiss plaintiff's claims against defendants in their official capacity for any relief other than prospective injunctive relief.

With those threshold issues decided, the court turns to the merits of plaintiff's Fourteenth Amendment claim. Plaintiff doesn't explain how the Fourteenth Amendment applies to this case or identify any evidence to support his undefined claim. And the court can't glean the basis of this claim even from the Pretrial Order because plaintiff's reference to the Fourteenth Amendment is perfunctory. *See generally id.* Plaintiff fails to adduce any evidence that would permit a reasonable factfinder to reach a conclusion in plaintiff's favor. The court thus grants defendants summary judgment on all remaining aspects of this claim. *See Mallard*, 2024 WL 726983, at *10 (granting summary judgment against pro se plaintiff's Fourteenth Amendment § 1983 claim based on his religious freedoms because plaintiff failed to "explain how [it] appl[ied]").

### B.   Section 1983 First Amendment Claims

Plaintiff sues defendants in their official and individual capacities under § 1983, claiming they violated his First Amendment religious freedom rights. Doc. 45 at 7 (Pretrial Order ¶ 4.a.i.). He seeks money damages, injunctive relief, and punitive damages. *Id.* at 7–9 (Pretrial Order ¶¶ 4–5). The court, first, addresses plaintiff's § 1983 First Amendment claim against defendants in their individual capacities. It then analyzes the official capacity claim.

#### 1.   Individual Capacity

Recall that plaintiff seeks injunctive relief, monetary damages, and punitive damages. But plaintiff can't sue defendants in their individual capacities for injunctive relief under § 1983. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022) (citation omitted) ("Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive . . . relief."). The court thus interprets plaintiff's § 1983 claim for injunctive relief as an official capacity claim and addresses it, below. Liekwise, plaintiff doesn't seek monetary damages against defendants in their individual capacities. Doc. 45 at 9 (Pretrial Order ¶ 5.) ("Monetary damages are

requested from the Defendants' 'representative agency' (so against Defendants in their official capacities)[.]").[6]

## 2.   Official Capacity

The court next considers plaintiff's § 1983 official capacity claim against defendants for violating his First Amendment rights. The analysis of the official capacity claim depends on the type of relief sought. So, the court divides its analysis by the various types of relief sought. This approach starts with plaintiff's request for monetary damages.

### a.   Monetary Damages

Plaintiff requests $75,000 in compensatory damages from defendants in their official capacities. Doc. 45 at 9 (Pretrial Order ¶ 5). The Eleventh Amendment bars suits seeking to recover money damages from state actors acting in their official capacities. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that the [Eleventh Amendment's] reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." (citations omitted)). Generally, Kansas Department for Aging and Disability Services employees sued in their official capacities share the state's sovereign immunity. *See Gill v. Dep't of Aging & Disability Servs.*, No. 5:18-cv-04118, 2019 WL 2297513, at *5 (D. Kan. May 30, 2019). However, the immunity conferred by the Eleventh Amendment "is not absolute." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th

---

[6]    Because plaintiff's monetary damages and injunctive relief claims have failed, there's no underlying First Amendment § 1983 cause of action to which plaintiff's punitive damages claim can attach. *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991) ("A punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case."). Plaintiff's punitive damages claim under § 1983 against defendants in their individual capacity thus fails as well.

Cir. 2012) (citation omitted).  As our Circuit has explained, three exceptions exist to Eleventh

Amendment immunity:

> First, a state may consent to suit in federal court.  Second, Congress may abrogate
> a state's sovereign immunity by appropriate legislation when it acts under Section
> 5 of the Fourteenth Amendment.  Finally, under *Ex parte Young*, 209 U.S. 123
> (1908), a plaintiff may bring suit against individual state officers acting in their
> official capacities if the complaint alleges an ongoing violation of federal law and
> the plaintiff seeks prospective relief.

*Id.* (citations omitted).

Two of these exceptions plainly don't apply here.  *First*, Kansas hasn't waived its

immunity.  *Jones v. Courtney*, 466 F. App'x 696, 700 (10th Cir. 2012) (explaining that while

"Kansas has consented to suit for damages under the Kansas Tort Claims Act[,]" the Kansas Tort

Claims Act doesn't waive Eleventh Amendment immunity because the statute expressly

disclaims a waiver (citing Kan. Stat. Ann. § 75-6116(g) (further citations and internal quotation

marks omitted))).  *Second*, Congress didn't abrogate state sovereign immunity when it enacted

42 U.S.C. § 1983.  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998) (citing

*Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

The *third* Eleventh Amendment exception does apply, but it doesn't spare plaintiff's

claim for *monetary* damages.  The Supreme Court's *Ex parte Young* decision applies only to

injunctive and declaratory relief.  *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007) ("[T]he

Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only

declaratory and injunctive relief rather than monetary damages for alleged violations of federal

law, and (ii) are aimed against state officers acting in their official capacities, rather than against

the State itself.").

In sum, the Eleventh Amendment bars plaintiff's First Amendment § 1983 claim for

monetary damages against defendants in their official capacity and the court lacks jurisdiction

over this claim.  The court thus dismisses it.  The court next considers plaintiff's official capacity

claims for injunctive relief.[7]

### b.    Injunctive Relief

Because the Eleventh Amendment doesn't bar plaintiff's request for injunctive relief, the

court proceeds to the merits of plaintiff's § 1983 official capacity claim asserting defendants

violated his First Amendment rights.  To avoid summary judgment, plaintiff must adduce

evidence from which a reasonable factfinder could conclude that defendants placed a "substantial

burden" on his ability to exercise his religious rights.  *See Hernandez v. Comm'r of Internal Rev.*,

490 U.S. 680, 699 (1989).  Our Circuit has articulated the following test to determine when the

government places a substantial burden on a plaintiff's free exercise of religion, violating the

First Amendment:

> The government substantially burdens a person's religions exercise . . . when it (1)
> "requires participation in an activity prohibited by a sincerely held religious belief,"
> (2) "prevents participation in conduct motivated by a sincerely held religious
> belief," or (3) "places substantial pressure on an adherent either not to engage in
> conduct motivated by a sincerely held religious belief or to engage in conduct
> contrary to a sincerely held religious belief."

*Blair v. Raemisch*, 804 F. App'x 909, 916–17 (10th Cir. 2020) (quoting *Abdulhaseeb v. Calbone*,

600 F.3d 1301, 1315 (10th Cir. 2010)).[8]  If plaintiff has adduced evidence of substantial burden,

then the court next considers "whether a compelling governmental interest justifies the burden."

---

[7]    Defendants don't contest that plaintiff's First Amendment § 1983 official capacity claim for
injunctive relief falls under the *Ex parte Young* exception.  Nor could they.  Plaintiff's claim for
injunctive relief meets the *Ex parte Young* criteria.  Plaintiff's claims allege violations of federal law—
*i.e.*, depriving plaintiff of his constitutional rights to religious freedom, including his right to worship and
pray.  *See, e.g.*, Doc. 45 at 7–8 (Pretrial Order ¶ 4.a.i.) (alleging violations of the First Amendment).  And
plaintiff seeks prospective injunctive relief in the form of an order mandating eight hours of sweat lodge
and double portions of traditional meals.  *Id.* at 9 (Pretrial Order ¶ 5).

[8]    This test applies to both plaintiff's First Amendment claim and his RLUIPA claim.  *Blair*, 804 F.
App'x at 916–17 (articulating Tenth Circuit's three factor RLUIPA test and explaining that RLUIPA "test
is grounded in the Supreme Court's interpretation of substantial burden under the First Amendment's
Free Exercise Clause, . . . and thus is applicable to [plaintiff's] First Amendment claim as well.").

*Hernandez*, 490 U.S. at 699 (citations omitted).  Defendants argue that plaintiff's First Amendment claim fails at both steps of the analysis because (1) no reasonable factfinder could find a substantial burden on his religion and (2) compelling government interests justify any burden on plaintiff's religion.

Here, plaintiff's expression of his First Amendment claim in the Pretrial Order asserts that defendants showed "prejudicial indifference concerning [his] right to practice in and worship of prayer."  Doc. 45 at 7–8 (Pretrial Order ¶ 4.a.i.).  Specifically, plaintiff argues that defendants restricted the following Native American religious activities:  "smudging, sweat lodge ceremonies, communal meals, pipe and drum ceremonies, and healing and passing ceremonies."  *Id.* at 3 (Pretrial Order ¶ 3.a.ii.).  He seeks injunctive relief to increase sweat lodge ceremonies lasting eight hours—instead of the current four hour limit.  Also, he seeks an injunction mandating double portions of food for special meals.  *Id.* at 9 (Pretrial Order ¶ 5).  The court addresses each of plaintiff's allegations in turn.

### i.        Sweat Lodge Ceremonies

During COVID-19 Phases A, B, and C, LSH residents couldn't perform sweat lodge ceremonies because the ceremonies didn't permit social distancing or masking.  Doc. 49-4 at 4–5 (Bennett Decl. ¶ 22).  In early 2023, LSH permitted sweat lodge ceremonies to resume.  Doc. 49-2 at 10 (Rop Decl. ¶ 50).  But the lodges had deteriorated, so residents lacked lodges to use for the ceremonies.  Doc. 53 at 23 (Brown Decl. ¶ 76).  By late spring 2023, LSH had rebuilt the sweat lodges and monthly ceremonies resumed.  Doc. 49-2 at 10 (Rop Decl. ¶ 52).  Currently, LSH and SPTP permit residents to conduct four hour sweat lodge ceremonies monthly, with an additional 30 minutes to clean up after the ceremony.  Doc. 53 at 17 (Brown Decl. ¶ 44).

Plaintiff asks the court to enter an injunction ordering eight hour sweat lodge ceremonies instead of the current four-hour ceremonies.  Doc. 45 at 9 (Pretrial Order ¶ 5).  Plaintiff contends, it appears, that the difference between four and eight hour sweat lodge ceremonies substantially burdens plaintiff to practice his religion.  But there are two problems with plaintiff's argument.

*First*, plaintiff hasn't adduced any evidence to support his position.  He never responded to defendants' summary judgment motion.  The most he's mustered is the raw allegation in his Complaint that sweat lodge ceremonies lasted six and one-half hours before the COVID pandemic.  *See* Doc. 10 at 10 (2nd Am. Compl. ¶ 35).  But that allegation can't carry the day at the summary judgment stage.  *See, e.g.*, *Kannady*, 590 F.3d at 1169 (non-moving party "may not rest on [his] pleadings" to fend off summary judgment and, instead, non-movant must "bring forward specific facts showing a genuine issue for trial" on the dispositive issue "for which [the non-movant] carries the burden of proof."); *see also Bones*, 366 F.3d at 875 ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.").

*Second*, even if plaintiff had come forward with admissible evidence to support his lone allegation about substantial burden—*i.e.*, before the pandemic, sweat lodge ceremonies lasted six and a half hours—this hypothetical evidence wouldn't suffice.  *See* Doc. 10 at 10 (2nd Am. Compl. ¶ 35).  As our court has recognized, Circuit authority requires a First Amendment plaintiff to "demonstrate that the defendants 'substantially burdened his sincerely-held religious beliefs.'"  *Mallard*, 2024 WL 726983, at *10 (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)); *Tenison v. Byrd*, 826 F. App'x 682, 690–91 (10th Cir. 2020)).  As outlined above, government actors substantially burden a person's right to religious exercise when they: (1) "require[] participation in an activity prohibited by a sincerely held religious belief," (2) "prevent[] participation in conduct motivated by a sincerely held religious belief," or (3) "place[]

substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief." *Blair*, 804 F. App'x at 909 (10th Cir. 2020) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)).

Here, plaintiff has adduced no evidence suggesting that defendants' conduct permits a finding that defendants have violated any of these three prongs.  Indeed, our court has granted summary judgment against a sweat lodge-based claim nearly identical to the one plaintiff makes here.  *See Mallard*, 2024 WL 726983, at *6–7 (granting summary judgment against First Amendment and RLUIPA claims because institution limited sweat lodge ceremonies to four hours per month).  *Mallard* is no outlier as other district courts have disposed of similar claims based solely on reduced time for religious ceremonies.  *See Decker v. Frakes*, No. 4:15CV3113, 2016 WL 424973, at *2 (D. Neb. Feb. 3, 2016) (granting motion to dismiss because plaintiff's substantial burden claim failed to plead facts capable of demonstrating that 50% reduction in "worship time" forced plaintiff "to omit essential worship elements" from the service, which caused his "worship service to be incomplete" (internal quotation marks omitted)).

In sum, plaintiff has failed to identify evidence presenting a triable claim on the First Amendment sweat lodge aspect of his § 1983 claim.  The court thus grants summary judgment against that claim.

### ii.        Special Meals

Plaintiff also alleges that defendants have violated his First Amendment rights by restricting his access to special meals.  LSH permits residents up to four special meals per year for religious holidays.  Doc. 53 at 21 (Brown Decl. ¶ 65).  Residents who adhere to Native American religions eat their meals in the outdoor assembly yards.  *Id.* at 22 (Brown Decl. ¶ 70).

LSH's food services contractor provides the special meals in separately packaged, individual servings to prevent the spread of infection and disease.  *Id.* at 22 (Brown Dep. 68–69, 71).

Here, plaintiff asks the court to enjoin defendants, ordering them to provide plaintiff with double portions of traditional meals.  Doc. 53 at 9 (Pretrial Order ¶ 5).  Defendants contend that "providing only regular-sized portions of food does not substantially burden a person's religious celebration of a holiday[.]"  Doc. 49 at 32.  Plaintiff has offered no evidence demonstrating that providing him with regular sized meals burdens his right to exercise his religion.  The substantial burden test applied to plaintiff's sweat lodge-based claim also applies to this special meals iteration of his substantial burden.  As already summarized, above, this requires him to come forward with facts, evidence showing that defendants' conduct violated one of *Blair*'s three prongs.  He hasn't done so.  Plaintiff thus has failed to show a triable issue of material fact warranting a trial on this second aspect of his religious exercise claim.  The court thus grants defendants summary judgment in their favor on plaintiff's special meals claim.

### iii.    Smudging

Plaintiff doesn't seek any injunctive relief specific to smudging, but the court addresses this religious practice out of an abundance of caution.  LSH residents currently are allowed to smudge daily.  Doc 53 at 16 (Brown Decl. ¶ 39).  Residents meet for about 20 minutes to smudge, unless the religious adherents already have met for another gathering that day.  *Id.* at 17 (Brown Decl. ¶ 43).  During COVID-19 protocols, adherents to the Native American religion could use liquid smudge to smudge indoors even when group smudging was prohibited.  *Id.* at 18 (Brown Decl. ¶¶ 48–49).  By June 2020, residents could resume daily traditional smudging.  *Id.* (Brown Decl. ¶ 50).  And defendants ended all COVID-19 related restrictions in June 2023.  *Id.* at 19 (Brown Decl.  ¶ 53).  Defendants acknowledge "there have been occasions where residents

have not been allowed to smudge outdoors or smoke for other reasons." *Id.*  But a "prisoner's constitutional right to freely exercise his religion is not violated by the occasional inability to practice." *Omran v. Metrejean*, 643 F. App'x 339, 340 (5th Cir. 2016) (citation omitted). [9]  No reasonable factfinder could find that defendants have substantially burdened plaintiff's religious freedom by restricting smudging.  The court grants summary judgment against plaintiff on this third aspect of his claim.

### iv.        Pipe and Drum Ceremonies

Plaintiff also claims that defendants have restricted his free exercise of religion by restricting pipe and drum ceremonies, though he doesn't request any injunctive relief specific to this practice.  Doc. 45 at 3 (Pretrial Order ¶ 3.a.ii.).  The summary judgment record shows that, during Phases A, B, and C of the COVID-19 protocol, defendants prohibited residents from performing pipe and drum ceremonies.  Doc. 49-4 at 4–5 (Bennett Decl. ¶ 22).  When the COVID-19 protocol permitted pipe and drum ceremonies to resume, it required residents to use individual pipes.  Doc. 53 at 20 (Brown Decl. ¶ 57).  Plaintiff acquired and used his own pipe. *Id.* at 21 (Brown Decl. ¶ 63).  During parts of 2021 and 2022, while county burn bans were in effect, LSH and SPTP prohibited residents from using pipes.  Doc. 49-4 at 15 (Bennett Decl. ¶ 69).  Residents thus couldn't participate in the smoking part of the pipe and drum ceremonies. *Id.*  Things changed again in September 2022, when LSH and SPTP relaxed their policy and permitted residents to smoke pipes even during burn bans. *Id.* at 16 (Bennett Decl. ¶ 71).  Currently, residents meet weekly for two-hour pipe and drum ceremonies.  Doc. 53 at 16–17 (Brown Decl. ¶ 40).  Also, participants in the ceremonies can decide whether to use an individual

---

[9]        Plaintiff, of course, isn't in custody in a prison.  Still, the court finds cases about First Amendment free exercise claims by prisoners persuasive here to define when the government substantially burdens a person's religious rights.

prayer pipe or share a group prayer pipe.  *Id.* at 21 (Brown Decl. ¶ 64).  Plaintiff himself "has

been and is permitted to engage in group pipe-and-drum ceremonies . . . when not prevented by

COVID-19 protocol or other exigent circumstances."  *Id.* (Brown Decl. ¶ 63).

Plaintiff contends that defendants have restricted pipe and drum ceremonies.  Doc. 45 at 3

(Pretrial Order ¶ 3.a.ii.).  But that's as far as he goes.  He never requests injunctive relief altering

LSH and SPTP's pipe and drum ceremony permissions.  And he has adduced no evidence

showing that any restrictions affecting the pipe and drum ceremonies substantially burdened his

ability to adhere to his Native American religion.  To the contrary, defendants have adduced

uncontroverted evidence that plaintiff can and does engage in pipe and drum ceremonies.

The court evaluates this part of plaintiff's First Amendment claim under the same test for

substantial burden discussed at length, above.  No reasonable juror could find or infer that

defendants substantially burdened plaintiff's ability to practice his religion through the pipe and

drum ceremony allowances.  The court thus grants summary judgment against this aspect of

plaintiff's First Amendment claim.

### v.        **Healing and Passing Ceremonies**

The court also construes the Pretrial Order broadly, and so views it to present, possibly, a

§ 1983 claim suing defendants in their official capacity for restricting plaintiff's ability to

participate in healing and passing ceremonies.  Residents who adhere to Native American

religions may request to conduct a healing or passing ceremony—an activity that involves

smoking a pipe—when someone close to the participants is sick or has died.  Doc. 53 at 26

(Brown Decl. ¶¶ 95–97).  Since November 2022, LSH and SPTP have allowed passing and

healing ceremonies during daily smudging times or, sometimes, as separate ceremonies during

the week.  *Id.* at 27 (Brown Decl. ¶ 100).

Plaintiff's First Amendment claim contends that defendants have restricted healing and passing ceremonies.  Doc. 45 at 3 (Pretrial Order ¶ 3.a.ii.).  But, again, plaintiff requests no injunctive relief altering LSH's current healing and passing ceremonies practices.  And he has come forward with no specific facts capable of supporting a finding that the current healing and passing ceremonies substantially burden his right to adhere to or exercise his Native American religion.  To the contrary, defendants have adduced evidence that, since November 2022, LSH has allowed daily healing and passing ceremonies during smudging times.  Doc. 53 at 27 (Brown Decl. ¶ 100).  In short, no reasonable juror could find or infer that defendants substantially burdened plaintiff's ability to practice his religion by limiting healing and passing ceremonies. The court grants summary judgment to defendants against this claim.

### vi.      Conclusion

In sum, no reasonable factfinder could conclude that LSH and SPTP's policies—ones governing sweat lodge ceremonies, special meals, smudging, pipe and drum ceremonies, and healing and passing ceremonies—substantially burden plaintiff's ability to practice his Native American religion.  Defendants have adduced uncontroverted evidence that plaintiff currently can engage in four hour sweat lodge ceremonies, so defendants haven't "prevent[ed] participation in conduct motivated by a sincerely held religious belief[.]"  *Blair*, 804 F. App'x at 916–17.  Defendants likewise have adduced evidence that plaintiff receives special meals.  On these summary judgment facts, no reasonable factfinder could conclude plaintiff is entitled to the injunctive relief he seeks:  eight hours of sweat lodge ceremonies and double portions of special meals.  Also, defendants have introduced uncontroverted evidence that the other practices plaintiff references—smudging, pipe and drum ceremonies, and healing and passing ceremonies—occur regularly at LSH.  So, no reasonable factfinder could conclude that

defendants "prevent[] participation in conduct motivated by a sincerely held religious belief[.]"
*Blair*, 804 F. App'x at 916–17.  The court thus grants defendants summary judgment against
plaintiff on his § 1983 First Amendment claim for injunctive relief.[10]

Next, the court addresses plaintiff's RLUIPA claim.

### C.    RLUIPA

"RLUIPA provides that '[n]o government shall impose a substantial burden on the
religious exercise of a person residing in or confined to an institution,' unless the government
shows that the burden furthers 'a compelling governmental interest' and does so by 'the least
restrictive means.'"  *Mallard*, 2024 WL 726983, at *5 (quoting 42 U.S.C. § 2000cc-1(a)).  The
substantial burden test outlined in the First Amendment portion of this Order applies equally to
RLUIPA and § 1983 First Amendment Free Exercise claims.  *Blair*, 804 F. App'x at 916–17.
The court already has identified the standard for substantial burden claims, so there's no need to
repeat it here.  *See* Section III.B.2.b.  The court, below, applies this standard to plaintiff's
RLUIPA claim.  The court then considers whether summary judgment is appropriate against all
forms of plaintiff's RLUIPA claim.  Also, the court quickly addresses the RLUIPA claim
asserted against defendants in their individual capacity.  The analysis concludes the official
capacity claims.

### 1.    Individual Capacity

The court dismissed plaintiff's individual capacity RLUIPA claims in an earlier Order.
*See* Doc. 11 at 6; *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) ("[T]here is no cause

---

[10]     Because plaintiff's monetary damages and injunctive relief claims have failed, there's no
underlying First Amendment § 1983 cause of action for plaintiff's punitive damages claim to attach to.
*Mason*, 948 F.2d at 1554.  Plaintiff's § 1983 claim for punitive damages against defendants in their
official capacities thus fails, as well.

of action under RLUIPA for individual-capacity claims.").  That ruling only leaves plaintiff's official capacity RLUIPA claims.  The next section addresses all those claims.

### 2.      Official Capacity

Recall that plaintiff seeks compensatory damages, injunctive relief, and punitive damages.  But the "only relief available to [plaintiff] under RLUIPA is declaratory and injunctive relief against defendants in their official capacities." *Warner v. Patterson*, 534 F. App'x 785, 788 (10th Cir. 2013) (citing *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) ("States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA[.]")).  *Sossamon* thus blocks plaintiff's request for monetary and punitive damages, so the court must dismiss plaintiff's request for compensatory damages under RLUIPA.

Plaintiff's claim for injunctive relief can't survive summary judgment.  The analysis that doomed plaintiff's § 1983 First Amendment claim also disposes of his RLUIPA claim because plaintiff must meet the same substantial burden requirement for his RLUIPA claim.  Above, the court concluded that no reasonable factfinder could conclude that defendants substantially burdened plaintiff's ability to practice his religion.  *See above* § III.B.2.  The same summary judgment facts and analysis decide plaintiff's RLUIPA claims. The court thus grants defendants summary judgment on plaintiff's official capacity RLUIPA claim for injunctive relief.[11]  No federal claims remain.

Next, the court thus turns its focus to plaintiff's state law claims.

---

[11]      As mentioned above, without any monetary damages or injunctive relief, plaintiff can't recover punitive damages under RLUIPA.  *Mason*, 948 F.2d at 1554.

D.      **Plaintiff's State Law Claims**

Plaintiff also sues defendants for violating Section 10 of the Kansas Constitution Bill of Rights and Kan. Stat. Ann. § 59-29a22(b)(8).  Doc. 45 at 7 (Pretrial Order ¶ 4.a.i.).  Defendants challenge plaintiff's state law claims, asking the court to decline to exercise its supplemental jurisdiction over them or dismiss them on their merits.  Doc. 49 at 40.  The court has dismissed all federal claims and now declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original jurisdiction[.]"  Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  In "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7.  Also, notions "of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Our Circuit has expressed its preference that, when a district court dismisses all federal claims, it typically should decline to exercise supplemental jurisdiction over state law claims. *See Smith v. City of Enid ex rel. City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise

22

jurisdiction over any remaining state claims.").  But still, the decision is committed to the district court's sound discretion.  *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004).

With this precedent in mind, the court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims.  The court finds no compelling reasons to depart from our Circuit's general directives.  Fairness and comity generally provide that a state court should resolve plaintiff's state law claim.  So it is here.

**IV.      Conclusion**

The court grants defendants' Motion for Summary Judgment (Doc. 48) in part and, for some claims, the court construes the motion as one asking the court to dismiss certain claims. All three of plaintiff's federal claims fail.  *First*, the court dismisses the following aspects of plaintiff's § 1983 claim against defendants for violating his Fourteenth Amendment rights:  (a) his request for injunctive relief based on plaintiff's individual capacity claims; and (b) his official capacity claims seeking relief *other than* prospective injunctive relief.  The remaining pieces of that claim are unexplained and perfunctory, so the court grants defendants summary judgment against those other aspects of his claim.  *Second*, the court construes plaintiff's § 1983 claim asserting defendants violated plaintiff's First Amendment rights as an official capacity claim. And it dismisses—without prejudice—this claim's request for monetary damages because the Eleventh Amendment applies.  In contrast, the court grants summary judgment against the request in this First Amendment claim for injunctive relief because no reasonable factfinder could conclude that defendants have substantially burdened plaintiff's First Amendment rights. *Third*, earlier in the case, the court dismissed plaintiff's RLUIPA claim against defendants in their individual capacity.  The court now dismisses plaintiff's remaining request under RLUIPA for compensatory damages on his official capacity claims because the Eleventh Amendment

applies.  The court thus dismisses that claim without prejudice.  And the court grants summary judgment against plaintiff's request under RLUIPA for injunctive relief against defendants in their official capacity because no reasonable factfinder could conclude that defendants have substantially burdened plaintiff's religious practices.  Having disposed of all plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over his state law claims.  It thus dismisses those claims without prejudice.

These rulings, together with decisions recorded earlier in the case, dispose of all claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Summary Judgment (Doc. 48) is granted in part, as specified in this Order.

**IT IS FURTHER ORDERED THAT** certain federal claims, as specified in this Order, are dismissed because the court lacks jurisdiction to decide them.

**IT IS FURTHER ORDERED THAT** the court declines to exercise supplemental jurisdiction over plaintiff's state law claims.  The court dismisses those state law claims without prejudice.

The court directs the Clerk of the Court to enter a final judgment comporting with the case-ending rulings memorialized in this Order.

**IT IS SO ORDERED.**

**Dated this 8th day of April, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
